UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN W. GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:16 CV 853 CDP |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff John W. George brings this action under 42 U.S.C. § 405 seeking

judicial review of the Commissioner's final decision denying his claim for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*  Because the Commissioner's final decision is supported by

substantial evidence on the record as a whole, I will affirm the decision.

### **Procedural History**

On September 10, 2013, the Social Security Administration denied George's

July 2013 application for DIB, in which he claimed he became disabled on January

1, 2012, because of rheumatoid arthritis and vision problems.  At George's request,

a hearing was held before an administrative law judge (ALJ) on April 20, 2015, at

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d), Berryhill is automatically substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action.

which George and a vocational expert testified.  On May 28, 2015, the ALJ denied George's claim for benefits, concluding that the vocational expert's opinion supported a finding that George could perform work as it exists in significant numbers in the national economy.  On May 16, 2016, after considering additional evidence, the Appeals Council denied George's request for review of the ALJ's decision.  The ALJ's decision is thus the final decision of the Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, George first requests that the matter be remanded so that the ALJ may consider in the first instance the additional evidence that he submitted to and was considered by the Appeals Council.  George claims that the ALJ's consideration of this evidence would result in a finding of disability.  George also claims that the ALJ's decision is not supported by substantial evidence on the record as a whole, arguing that the ALJ's failure to specifically identify his functional restrictions resulted in a residual functional capacity (RFC) assessment that was too vague to provide a basis to find that he could perform work.  George requests that the matter be reversed and remanded for further evaluation.  For the reasons that follow, the ALJ did not err in her determination.

## Evidence Before the ALJ

A.    George's Testimony

At the hearing on April 20, 2015, George testified in response to questions

posed by the ALJ and counsel.

At the time of the hearing, George was fifty-three years old.  He is a high school graduate and lives alone.  (Tr. 29, 36.)

George worked for eighteen years as a groundskeeper and general maintenance man at Strathalbyn Farms.  (Tr. 30-31.)  He then worked at BDM Household for five years as a groundskeeper and maintenance man.  This job ended in November 2010 when his employer laid off all of its employees.  George filed for unemployment benefits at that time and has not worked since.  (Tr. 29, 31-32.)  George received unemployment benefits during the first quarter of 2012 but none thereafter.  (Tr. 126.)

George was diagnosed with rheumatoid arthritis in 2009 and currently takes eight tablets of Methotrexate each week for the condition.  He sees his primary care physician and a rheumatologist for treatment.  (Tr. 33-35.)  George testified that he generally experiences pain in his wrists with the condition and occasionally drops things.  He was instructed by his rheumatologist to wear wrist splints, but he wraps his wrists in ace bandages instead because he likes to do woodworking and sanding.  George experiences pain with this activity, however, and must take a break after twenty or thirty minutes.  George also testified that he experiences double vision when his arthritis flares up.  (Tr. 35-36, 40.)

George testified that during minor flare ups of his condition, he experiences

pain and exhaustion – primarily exhaustion.  His hands also get warm and "turn in."  The minor flare ups are unpredictable in frequency but can last up to two days.  George usually sits or lies down during these episodes.  With major flare ups, George testified that he can barely move.  He can do nothing around the house and is unable to even turn a doorknob.  He takes prednisone during these episodes.  George testified that he experiences a major flare up every other month, and that they are severe enough that he has to go to the hospital.  (Tr. 37-40.)

As to his daily activities, George testified that he wakes in the morning and does household chores such as laundry or the dishes.  He then goes to his mother's house to let her dog outside.  George does his own grocery shopping.  His hobbies include model trains and woodworking.  He builds boxes and tables.  He uses a table saw for his woodworking, but testified that it is very difficult for him now.  (Tr. 36-37.)  He wears shoes with Velcro to accommodate his hand pain.  He no longer uses his cast iron skillet because it is too heavy to pick up.  (Tr. 40-41.)

B.    Vocational Expert Testimony

Dale Thomas, a vocational expert, testified at the hearing in response to questions posed by the ALJ.

The ALJ asked Mr. Thomas to assume an individual of George's age, education, and work experience who was limited to work at the "light exertional level" and who could "occasionally climb ramps and stairs, stoop, kneel, and

crouch.  He should never climb ladders, ropes, or scaffolds, or crawl.  He would be limited to frequent handling and fingering with his bilateral upper extremities, and he can have only occasional exposure to extremes of cold." (Tr. 42.)  Mr. Thomas testified that such a person could not perform any of George's past work but could perform unskilled light work as a bench assembler, housecleaner, and courier.  The ALJ then asked Mr. Thomas to assume the same individual but that he was limited to occasional handling and fingering.  Mr. Thomas testified that such a person could perform light unskilled work as a counter clerk.  The ALJ then asked Mr. Thomas to assume the individual would need two breaks each day in addition to normal breaks for unskilled work.  Mr. Thomas testified that no jobs in the unskilled labor force would be available.  (Tr. 43-44.)

C.    Medical Evidence

George underwent testing in June 2009 in response to complaints of joint pain and swelling.  All test results were essentially normal except for a high rheumatoid factor.  George was referred to Dr. Sona Kamat, a rheumatologist, for appropriate medication.  (Tr. 218-22.)

George visited Dr. Kamat on January 10, 2011, and complained of occasional achy, dull pain in both hands.  It was noted that George took Methotrexate for rheumatoid arthritis and that he obtained benefit from it.  Dr. Kamat considered George's condition to be mild in severity.  George reported that

- 5 -

he had experienced joint pain a few months prior, but the pain resolved. Physical examination showed George's right wrist to be swollen. Dr. Kamat considered George to be doing well and suggested that he try reducing his medication dosage. (Tr. 190-92.)

George returned to Dr. Kamat on April 18, 2011, who noted there to be no change in George's condition and that it continued to be mild. George reported that his symptoms were aggravated by cold or rainy weather, and he complained of pain in his back and joints. Physical examination showed no change from his previous exam. Dr. Kamat noted George to have decreased his medication dosage slightly and to be doing well. George was instructed to continue on his medication and to return in four months. (Tr. 187-89.)

On August 15, 2011, George reported to Dr. Kamat that he rarely experienced wrist pain and that he received benefit from his medication. Physical examination was normal in all respects. No skeletal tenderness or joint deformity was noted. Dr. Kamat noted George to be doing well overall and suggested that he continue on his medication at a decreased dose. She considered his impairment to be moderate in severity. George was instructed to return in four months. (Tr. 193-95.)

The record shows that George did not seek further medical treatment until May 7, 2013, at which time he visited the People's Health Center with complaints

of pain in his right wrist and in both hips.  He rated the pain at a level five on a scale of one to ten.  George reported the pain to worsen with activity.  George's history of rheumatoid arthritis was noted, and it was noted that he was taking no medication.  George was advised to quit smoking.  (Tr. 212-13.)

George returned to the People's Health Center on May 29 and visited Dr. Rosa Galves-Myles.  He reported that he currently had no pain.  Physical examination was essentially unremarkable, except tenderness was noted in the right wrist and about the interphalangeal joints in the hands.  No edema or deformities were noted.  George was prescribed Methotrexate and was instructed to take eight tablets once a week.  George was referred to Rheumatology.  (Tr. 208-11.)

George visited Dr. Kamat on August 7, 2013, and complained of persistent pain in his hands and knees, aggravated by cold or rainy weather.  George also complained of morning stiffness but reported no fatigue.  Dr. Kamat instructed George to continue with Methotrexate and suggested that he start an additional medication.  George declined the additional medication because of cost and the possibility of side effects.  (Tr. 216-17.)

George returned to Dr. Kamat on December 11, 2013, and reported having persistent pain in his hands, ankles, hips, and left wrist.  George also reported being fatigued and having morning stiffness.  George reported having flare ups of

his rheumatoid arthritis on days that he is active.  Dr. Kamat recommended that George see his primary care physician, whom he had not seen in three years. George was given information about diet and exercise and was instructed to return in four months.  (Tr. 228-29.)

George visited his primary care physician, Dr. John Ellena, on January 15, 2014.  Dr. Ellena noted George's only complaint to be his arthritis.  George's medications were noted to include regular doses of Methotrexate, and prednisone as needed.  Physical examination was normal in all respects, including musculoskeletal examination and examination of the extremities.  (Tr. 233-36.)

George visited Dr. John D. Lowry on September 8, 2014, to establish care under new insurance.  Dr. Lowry noted George's rheumatoid arthritis to be well controlled with medication and that George had no current complaints.  George denied being fatigued.  He reported having pain and stiffness in his hands after periods of inactivity.  Physical examination was unremarkable except for generalized swelling of the fingers of both hands.  George had good range of motion.  George was continued on Methotrexate and was instructed to return in three months.  He was referred to Dr. Aisha Shaikh for his rheumatoid arthritis. (Tr. 239-42, 263.)

George returned to Dr. Lowry on February 10, 2015, with complaints of worsening fatigue.  He had no other complaints.  Dr. Lowry noted George's

rheumatoid arthritis to be fairly well controlled with medication.  George was scheduled to see his new rheumatologist soon.  Physical examination was normal in all respects.  Dr. Lowry diagnosed George with rheumatoid arthritis–stable.  He noted the etiology of George's fatigue to be unknown but opined that it was possibly related to rheumatoid arthritis or thyroid disease, which was yet to be ruled out.  George was instructed to return in six months.  (Tr. 269-70.)

George visited Dr. Shaikh on February 17, 2015, for evaluation of his rheumatoid arthritis.  George reported having had arthritis pain for five years but that he was doing fairly well on his medication.  He reported that he currently has a flare up of symptoms once every couple of months, but that he takes prednisone for such episodes.  Review of systems showed George to report having fatigue, dry eyes, joint pain and swelling, and numbness and tingling in the hands.  George's medications were noted to include prednisone and Methotrexate.  Physical examination showed crepitus about both knees but otherwise was normal.  George had no swollen joints, no tight muscle groups, and no tender points.  Dr. Shaikh determined that George's rheumatoid arthritis was doing reasonably well with medication.  She opined that the paresthesia of both hands was suggestive of carpal tunnel syndrome.  Dr. Shaikh ordered laboratory and diagnostic tests and instructed George to continue with his medications.  She added Meloxicam to George's medication regimen and suggested that he wear splints on his hands for his carpal

tunnel symptoms.  George was instructed to return in eight weeks.  (Tr. 301-05.)

X-rays of the wrists and hands taken February 17 showed no abnormalities. (Tr. 309-10.)

George visited Clarkson Eyecare on February 24, 2015, with complaints of double vision.  He reported that he was previously diagnosed with Sjogrens disease.  George reported always having a "weak" eye but that he did not experience diplopia until five years ago.  Examination showed refractive error, cataract, and nuclear sclerosis.  A new prescription for glasses was ordered, and George was instructed to return in one year.  (Tr. 317.)

### Evidence Submitted to and Considered by the Appeals Council

After George's August 7, 2013, visit with Dr. Kamat, her office informed him on August 8 that his recent laboratory tests yielded stable results and that there was no need for further testing.  (Tr. 328.)  Laboratory tests dated December 11, 2013, were likewise stable.  (Tr. 327.)

On June 30, 2015, Dr. Shaikh completed a Physical Medical Source Statement (MSS) at the request of George's counsel wherein she reported that George was diagnosed with rheumatoid arthritis and vitamin D deficiency.  Dr. Shaikh opined that in an eight-hour workday, George could sit for four hours, stand for three hours, and walk for three hours.  Dr. Shaikh opined that George could frequently lift and carry up to ten pounds and occasionally lift and carry twenty

pounds. She further opined that George had no limitations with his hands and no problems with balance. She opined that George could frequently reach above his head and occasionally stoop. Dr. Shaikh reported objective signs of George's pain to be limited range of motion. Subjective signs were his complaints of pain. She opined that George's pain precluded him from focusing on simple tasks on a sustained work schedule, and that he would be absent from work about twice a month and late to work about twice a month. Dr. Shaikh also opined that George may need to take additional breaks throughout the workday if he experienced a flare up. Dr. Shaikh noted in this MSS that her opinions were only estimates because she did not assess George's limitations during his clinic visit. (Tr. 329-32.)

## The ALJ's Decision

The ALJ found George to meet the requirements of the Social Security Act through December 31, 2015, and that he had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date of disability. The ALJ found George's rheumatoid arthritis to be a severe impairment, but that it did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found George to have the RFC to perform light work as defined in the

Regulations,[2] with additional limitations to occasional stooping, kneeling, crouching, and climbing ramps and stairs.  George was further limited to never crawling or climbing ladders, ropes, or scaffolds.  He was also limited to occasional handling and fingering bilaterally.  (Tr. 13-14.)  The ALJ found George's RFC to prevent him from performing his past relevant work. Considering George's RFC and his age, education, and work experience, the ALJ found vocational expert testimony to support a conclusion that George could perform other work as it exists in significant numbers in the national economy, and specifically as a counter clerk.  The ALJ therefore found George not to be disabled at any time from January 1, 2012, through the date of the decision.  (Tr. 16-17.)

## Discussion

To be eligible for disability insurance benefits under the Social Security Act, George must prove that he is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is

declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

A.    Evidence Submitted to and Considered by the Appeals Council

As summarized above, George submitted additional evidence to the Appeals Council, which the Appeals Council considered in determining not to review the

ALJ's decision.  George claims that the ALJ should be given the opportunity to review this evidence in the first instance because it would likely result in a finding of disability by the ALJ.  George's argument is misplaced.

Evidence submitted to and considered by the Appeals Council is part of the administrative record before me for judicial review.  On this administrative record, which now includes the new evidence, I must determine whether the ALJ's decision is supported by substantial evidence.  *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007); *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000).  The mere inclusion of additional evidence in the record is not a reason in itself to remand the matter to an ALJ for consideration.  *Contra Lamp v. Astrue*, 531 F.3d 629, 633 (8th Cir. 2008) (matter remanded for ALJ to consider new evidence where record was not clear whether Appeals Council considered it).  If this new, material, and relevant evidence was NOT considered by the Appeals Council, then remand would be warranted.  *Whitney v. Astrue*, 668 F.3d 1004, 1006 (8th Cir. 2012).  But that is not the case here.  Because the Appeals Council *did* consider this additional evidence, my role is to consider the entirety of the administrative record to determine whether the ALJ's decision is supported by substantial evidence.  Upon such consideration, I find that it is.

The ALJ summarized the record that was before her, including the medical facts, non-medical evidence, and the consistency of such evidence when viewed in

light of the record as a whole.  In determining the evidence not to support a finding of disability, the ALJ noted that George's employment ended because of a lay-off and not because of an inability to perform work on account of medical impairments.  She also noted that during the relevant period, George went for periods of months and even years without seeing a doctor.  *See Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (infrequent medical treatment during relevant period suggest that symptoms not so great as to preclude the performance of work).  And when George did visit a doctor, he often had no complaints, physical examinations yielded essentially normal results, and the doctors consistently noted that he was doing well on medication.  In fact, George's primary physician noted in 2014 and 2015 that George's condition was well controlled with medication.  Where an impairment is well controlled with medication, a finding of disability is precluded.  *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011); *see also Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (impairments controllable by treatment or medication are not considered disabling).  The ALJ also noted that while George reported having flare ups, they were rare and, contrary to George's testimony, did not require hospital care.  George told his doctors that he took prednisone during these episodes, which the doctors found to be effective.

George argues that the ALJ would have likely reached a different conclusion as to disability had she had the opportunity to review Dr. Shaikh's newly submitted

medical opinion because the opinion was from a treating specialist and imposed limitations that would render George disabled.  I disagree.

First, the record does not support George's contention that Dr. Shaikh was his "treating" physician as that term is defined in the Regulations.  The Regulations define a "treating source" as a claimant's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, *an ongoing treatment relationship with you.*"  20 C.F.R. § 404.1502 (emphasis added).  The record contains no evidence that, at the time Dr. Shaikh rendered her opinion in June 2015, she had an ongoing treatment relationship with George – given that she had seen George on only one occasion in February 2015 – such that she had sufficient knowledge from which she could form an opinion regarding George's ability to function in the workplace.  *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004).  I therefore disagree with George's assertion that the ALJ would assign significant weight to Dr. Shaikh's June 2015 MSS on the basis that she is his "treating" physician.[3]

I also note that Dr. Shaikh explicitly stated in her MSS that she did not assess George's limitations during his clinic visit and that therefore the opined limitations in the MSS were estimates only.  Where a medical opinion cites no

---

[3] Although George argues that it would be reasonable to assume that he continued to see Dr. Shaihk, and that evidence of these possible subsequent visits would be admitted upon remand, my review is limited to the administrative record as it now stands.

medical evidence to support its conclusions nor elaborates on its conclusions, it is entitled to little if any weight. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). Here, Dr. Shaikh admits that the opined limitations have no objective medical basis. Therefore, I cannot say that Dr. Shaikh's admittedly unsupported medical opinion, when considered with the other evidence of record, changes the ALJ's decision as to non-disability.

My review of the administrative record in its entirety shows the ALJ's finding of non-disability to be supported by substantial evidence. The medical evidence shows George's impairment to be well controlled on medication and to impose no significant restrictions. X-rays showed no abnormalities, and physical examinations consistently showed near-normal results – only slight swelling was noted. While laboratory testing showed positive rheumatoid factor and other results to support the diagnosis of rheumatoid arthritis, a mere diagnosis is insufficient in and of itself to establish disability. *Cf. Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014). Further, results from these labs were consistently stable, which demonstrates that George's condition did not deteriorate. Finally, no physician ever placed any functional restrictions on George's activities, and a review of the activities themselves show that George was not limited to such a degree that he must be considered disabled. *See Hensley v. Barnhart*, 352 F.3d 353, 356 (8th Cir. 2003) (finding of no disability supported by fact that no

functional restrictions were placed on claimant's activities).

Accordingly, upon consideration of all the evidence of record, including Dr. Shaikh's MSS, I find that the ALJ's conclusion that plaintiff is not disabled is supported by substantial evidence on the record as a whole.

B.    Vague RFC Limitation to "Light Work"

George claims that the ALJ's general limitation to "light work" is too vague to provide the basis for a finding that he had the RFC to perform work.  George claims that the ALJ erred by failing to undergo the required function-by-function analysis in making the RFC determination.  In the circumstances of this case, the ALJ did not err.

A claimant's RFC is the most he can do despite his physical or mental limitations.  20 C.F.R. § 404.1545(a).  The RFC is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996).  An ALJ's RFC analysis should "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions [listed] in . . . 20 C.F.R. § 404.1545[.]"  Id. at *1.  Functions listed in § 404.1545 include sitting, standing, walking, lifting, carrying, pushing, and pulling – all of which George claims the ALJ failed to assess here – as well as manipulative and postural functions.  The Ruling cautions that a failure

- 19 -

to make the function-by-function assessment "could result in the adjudicator overlooking some of an individual's limitations or restrictions."  SSR 96-8p, 1996 WL 374184, at *4.  However, "when there is no allegation of a . . . restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."  *Id.* at *3.

Where an ALJ does not "specify the details" of a claimant's RFC and describes it only in general terms, a reviewing court is unable to determine whether substantial evidence supports the ALJ's conclusion that the claimant can perform work.  *Pfitzner v. Apfel,* 169 F.3d 566, 568-69 (8th Cir. 1999).  In this case, however, the ALJ did not simply describe George's RFC in "general terms."  To the contrary, she made explicit findings and found George to have specific limitations in his postural and manipulative functional capacities.  Although it would have been preferable for the ALJ to also make specific findings as to sitting, standing, walking, etc., *see Depover v. Astrue*, 349 F.3d 563, 567 (8th Cir. 2003), I cannot say that she overlooked those functions.  Instead, the record reflects that the ALJ implicitly found that George was not limited in these areas.  *See id.*  All of the functions that the ALJ specifically addressed in the RFC were those in which she found a limitation based upon the evidence of record.  With the recitation of these specific limitations, it is reasonable to conclude that any specific function that was

omitted was a function that was not limited.  *Id.*  This is especially true here where no evidence of record shows that George was limited in his ability to sit, stand, walk, push or pull.  *See* SSR 96-8p, 1996 WL 374184, at *3.

Further, the ALJ's finding that George was limited to light work imposes a functional restriction in lifting and carrying, and specifically, lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds.  20 C.F.R. § 404.1567(b).  George makes no allegation and the record does not show that he was more restricted in this capacity than as found by the ALJ.

The ALJ made explicit findings as to George's postural and manipulative limitations as well as to his functional capacity to lift and carry.  The evidence does not show that George was limited in any other functional capacity, and George does not allege any specific restriction.  In these circumstances, the ALJ did not commit reversible error by failing to make explicit findings as to George's functional capacity in areas where the ALJ implicitly found no limitation.  *Depover*, 349 F.3d at 567-68.  For these same reasons, the ALJ was not required to refer to George's non-limitations in his hypothetical posed to the vocational expert.  *Id.* at 568.

## Conclusion

For all of the foregoing reasons, the ALJ's determination that George is not disabled is supported by substantial evidence on the record as a whole, and

George's claims of error are denied.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is

affirmed, and John W. George's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of July, 2017.